# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

DARWIN KUCHENREUTHER,

       Plaintiff,

vs.

ADVANCED DRAINAGE SYSTEMS, INC.,

       Defendant.

No. C 12-3088-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

In this action, removed from state court, plaintiff Darwin Kuchenreuther alleges that he was unlawfully terminated from his employment as a professional fleet driver with defendant Advanced Drainage Systems, Inc., (ADS) after reaching 12 months of continued disability leave. He originally contended that his termination was in retaliation for claiming workers compensation benefits, in violation of Iowa public policy, and because of his disability, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* He also alleged that ADS failed to accommodate his disability, in violation of the ADA.

This case is now before me on ADS's November 18, 2013, Motion For Summary Judgment (docket no. 14) on all of Kuchenreuther's claims. In a Resistance (docket no. 19), filed December 23, 2013, Kuchenreuther concedes that his ADA claims should be dismissed, but asserts that genuine issues of material fact preclude summary judgment on his claim of wrongful termination in violation of public policy. In a Reply (docket no. 21), filed January 10, 2014, ADS asserts that Kuchenreuther has failed to generate genuine issues of material fact that he was fired in retaliation for claiming workers compensation benefits, in violation of public policy, rather than pursuant to a consistent,

neutral custom and practice of terminating every employee who is unable to return to work after 12 months, regardless of the reason that the employee cannot return.

Determining precisely what facts are genuinely in dispute is complicated here, because both parties failed to comply with the requirements for submission of and resistance to a motion for summary judgment set forth in N.D. IA. L.R. 56. Specifically, ADS did not submit a statement of material facts, *filed as a separate electronic attachment to the motion*, or a consecutively numbered appendix. *See* N.D. IA. L.R. 56(a)(3) and (e). The first failing is of relatively little consequence here, however, because ADS did submit a "Statement of Material Facts" as a section of its brief in support of its Motion For Summary Judgment that substantially complies with the applicable local rule, although it does include various factual allegations in an extended footnote. Much more problematic is the lack of any response by Kuchenreuther to ADS's "Statement of Material Facts" in which Kuchenreuther "expressly admits, denies, or qualifies each of [ADS's] numbered statements of fact," as required by N.D. IA. L.R. 56(b)(2). Instead, Kuchenreuther has simply submitted a competing, unnumbered "Statement of Material Facts" as part of his Resistance brief, which neither complies with the requirements of N.D. IA. L.R. 56(b)(2), concerning his resistance to ADS's statement of facts, nor N.D. IA. L.R. 56(b)(3), concerning his statement of additional material facts that purportedly preclude summary judgment. Kuchenreuther also failed to submit a consecutively numbered appendix. Had I noticed these failings earlier, I likely would have stricken both the Motion For Summary Judgment and the Resistance. Because I did not notice these failings earlier, I have simply muddled through, attempting to ascertain from the parties' statements, arguments, and citations precisely what facts are genuinely in dispute.

A substantial part of ADS's Reply is devoted to objecting to several of Kuchenreuther's factual allegations as not supported by admissible evidence. I believe that, in some instances, ADS's objections are well taken. ADS is correct that both a

motion for summary judgment and a resistance to such a motion must be based on admissible evidence. *See, e.g.*, FED. R. CIV. P. 56(e) (affidavits in resistance to summary judgment must be based on admissible evidence); *Brooks v. Tri–Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (inadmissible evidence cannot be used to defeat summary judgment). As a general matter, however, I find it unnecessary to strike any of Kuchenreuther's factual allegations as unsupported by admissible evidence, because I find that I can simply disregard factual allegations that are not supported by admissible evidence. *See, e.g., Baxter v. Briar Cliff College Group Ins. Plan*, 409 F. Supp. 2d 1108, 1118–19 (N.D. Iowa 2006) (declining to strike challenged portions of the record, because the court could simply disregard inadmissible evidence in its disposition of the summary judgment motion). More specifically, until and unless I determine that a specific allegation of undisputed fact or allegation that the fact is, indeed, disputed becomes critical to the determination of any issue on summary judgment, I need not and will not indulge the parties in an assessment of the admissibility of the evidence supporting each and every challenged factual allegation. More importantly, I find that, even if I consider Kuchenreuther's factual allegations that are not adequately supported by admissible evidence, he has failed to generate any genuine issues of material fact on his wrongful discharge claim.

I find relatively few facts to be relevant and dispositive here. Kuchenreuther was hired to work at ADS's Eagle Grove plant as a professional fleet driver in June 2007. On April 7, 2009, Kuchenreuther injured his shoulder when his slipped and fell against another trailer while climbing on the side of his semi-trailer. He did not see a physician for that injury, however, until May 29, 2009, and he did not file a workers compensation claim for that injury until another medical appointment in early June 2009. ADS was self-insured for the first $200,000 of workers compensation claims, but its workers compensation benefits were managed by Travelers Insurance. There is no dispute that

ADS paid all of Kuchenreuther's medical bills associated with his shoulder injury. There is also no dispute that Kuchenreuther eventually settled in April 2011 an administrative complaint with the Iowa Industrial Commissioner related to his workers compensation injury, which he had filed in January 2010. Kuchenreuther was on leave for his shoulder injury from October 20, 2009, until October 20, 2010. There is no dispute that Kuchenreuther was no longer able physically to perform his fleet driver job when he went on leave, at any time during his leave, or thereafter. He returned to work at ADS for one day in January 2010, but he notified the plant manager, Mitchell Kirkland, that the purportedly "light-duty" work offered to him was too physically taxing, so that he would not be returning. There were no positions available that would have fit Kuchenreuther's restrictions at the Eagle Grove plant during or for the year following his medical leave.

On October 20, 2010, Kuchenreuther was notified by letter from the ADS human resources department in Ohio that he was terminated, because he had reached 12 months of continued leave without being able to return to work. This termination was effective October 20, 2010, and occurred approximately sixteen months after he first sought workers compensation benefits for his injury and nine months after he filed an administrative complaint concerning his workers compensation benefits. The decision to terminate Kuchenreuther was not made by or in consultation with Mr. Kirkland or anyone else at the Eagle Grove plant, but by the ADS human resources department in Ohio.

Kuchenreuther contends that Mr. Kirkland was hostile to his claim for workers compensation benefits. Kuchenreuther alleges that, when he reported the injury on April 7, 2009, Mr. Kirkland initially rejected another office employee's suggestion that he seek medical treatment, and instead directed him to take a drug test, but not to seek medical treatment for his shoulder. Kuchenreuther also alleges that Mr. Kirkland canceled his first surgery for his shoulder, because ADS wanted a "second opinion," and some of Kuchenreuther's physical therapy sessions, because Mr. Kirkland said he needed

Kuchenreuther to continue working. Kuchenreuther also alleges that, at a drivers' meeting in the fall of 2009, Mr. Kirkland asked Kuchenreuther about his impending surgery, then told the other drivers that Kuchenreuther's injury claim would cost the company money and take away from their ESOP retirement program.

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, "[t]he movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*) (quoting *Celotex*, 477 U.S. at 323). In response, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

When the parties have met their burden, the district judge's task is as follows:

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ---U.S. ----, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weigh-

> ing of the evidence, and the drawing of legitimate inferences
> from the facts are jury functions, not those of a judge."
> *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,
> 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), quoting
> *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.
> Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . . "'Where the record
> taken as a whole could not lead a rational trier of fact to find
> for the nonmoving party, there is no genuine issue for trial.'"
> *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at
> 587, 106 S. Ct. 1348.

*Torgerson*, 643 F.3d at 1042-43.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012). However, summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

Here, the "governing law" against which the parties' factual contentions must be measured on summary judgment, *see Anderson*, 477 U.S. at 248, is Iowa law governing claims of wrongful discharge in violation of public policy for seeking workers compensation benefits. As the Iowa Supreme Court has explained,

> Generally, an employer may fire an at-will employee at any
> time. *Abrisz v. Pulley Freight Lines, Inc.*, 270 N.W.2d 454,
> 455 (Iowa 1978). However, under certain circumstances we
> recognize a common law claim for wrongful discharge from
> employment when such employment is terminated for reasons
> contrary to public policy. *Lloyd [v. Drake Univ.]*, 686
> N.W.2d [225,] 228 [(Iowa 2004)]. To support a claim of
> wrongful discharge, the employee must show:
>
> > (1) existence of a clearly defined public policy that
> > protects employee activity; (2) the public policy would

> be jeopardized by the discharge from employment;
> (3) the employee engaged in the protected activity, and
> this conduct was the reason for the employee's
> discharge; and (4) there was no overriding business
> justification for the termination.

> *Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 761 (Iowa 2009).

> The tort of wrongful discharge exists as a narrow
> exception to the general at-will rule, *id.* at 762, and this court
> is careful to ground recognition of such claims in "a well-
> recognized and defined public policy of the state." *Springer
> v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (1988) *modified
> by Springer v. Weeks & Leo Co.*, 475 N.W.2d 630, 632-33
> (Iowa 1991). *Jasper* explained that this court has recognized
> four categories of activities protected by public policy in Iowa
> law: "(1) exercising a statutory right or privilege, (2) refusing
> to commit an unlawful act, (3) performing a statutory
> obligation, and (4) reporting a statutory violation." *Jasper*,
> 764 N.W.2d at 762 (citations omitted).

*Ballalatak v. All Iowa Agric. Ass'n*, 781 N.W.2d 272, 275 (Iowa 2010).

There is no doubt that, under Iowa law, discharge for pursuing workers compensation benefits falls within public policy protection. As the Iowa Supreme Court also explained,

> In *Springer*, this court held that "discharging an employee
> merely for pursuing the statutory right to compensation for
> work-related injuries offends against a clearly articulated
> public policy of this state." *Springer*, 429 N.W.2d at 559.
> The court relied upon Iowa Code section 85.18 (1987), which
> provides, "[n]o contract, rule, or device whatsoever shall
> operate to relieve the employer, in whole or in part, from any
> liability created by this chapter except as herein provided."
> *Id.* at 560. This court found the statute to be a clear expression
> of the public policy of the state of Iowa. *Id.*

*Ballalatak*, 781 N.W.2d at 276.

The critical questions here relate to causation and motivation, which are generally questions for the trier of fact. *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 282 (Iowa 2000). Nevertheless, as the Iowa Supreme Court has explained,

> In tortious discharge cases, the causation standard is higher than in discrimination cases. [*Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296,] 301 [(Iowa 1998)]. "The employee's engagement in protected conduct must be the *determinative* factor in the employer's decision to take adverse action against the employee." *Id.* (emphasis added).

*Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 13 (Iowa 2009). Merely demonstrating that a termination occurred after the employee engaged in protected activity is not enough. *See Dorshkind v. Oak Part Place of Dubuque II, L.L.C.*, 835 N.W.2d 293, 302 (Iowa 2013) (citing *Teachout*, 584 N.W.2d at 302). Neither is a showing that the employer merely knew of the employee's protected activity before the termination. *See Teachout*, 584 N.W.2d at 302. The existence of other legal reasons for the termination are also relevant to the determination of causation. *Fitzgerald*, 613 N.W.2d at 289. Similarly, "[h]arassment of an employee after the filing of a workers' compensation claim can be considered circumstantial evidence of an employer's retaliatory motive." *Weinzetl v. Ruan Single Source Transp. Co.*, 587 N.W.2d 809, 811 (Iowa Ct. App. 1998); *Clarey v. K–Products, Inc.*, 514 N.W.2d 900, 902 (Iowa 1994) (finding evidence of late payment of workers compensation benefits, disparaging comments concerning workers compensation claims, and harassment following filing of workers' compensation sufficient to create submissible issue).

Here, the time between Kuchenreuther's request for workers compensation benefits and his termination was approximately sixteen months and even the time between his administrative complaint about workers compensation benefits and his termination was over nine months, so that temporal proximity provides no inference of retaliatory intent. *See Dorshkind*, 835 N.W.2d at 302. Kuchenreuther has pointed to evidence

suggesting that *Mr. Kirkland* was hostile to his workers compensation claim and harassed him about it—interfering with his attempts to get medical attention for his shoulder injury, canceling his surgery and physical therapy, and complaining in front of other drivers that Kuchenreuther's workers compensation claim would cost the company money and have a negative effect on the drivers' ESOP retirement plan. Iowa law does not recognize a cause of action for harassment of an employee for seeking workers compensation benefits, but only recognizes that such harassment may be evidence of a retaliatory motive on a *wrongful discharge* claim. *See Weinzetl*¸ 587 N.W.2d at 811; *Clarey*, 514 N.W.2d at 902.

The bigger problem here is that Kuchenreuther has failed to generate any genuine issues of material fact that Mr. Kirkland's hostility had any causal relationship to the decision to terminate him, made by ADS's human resources division in Ohio, not by Mr. Kirkland, pursuant to a neutral custom or practice of the company. *Cf. Fitzgerald*, 613 N.W.2d at 289 (other reasons for the termination are relevant to the determination of causation). While Kuchenreuther contends that a Travelers' employee indicated that the policy at ADS was to terminate employees after 24 months of leave, even assuming that evidence is admissible, it is not enough to generate a genuine issue of material fact on the reason for Kuchenreuther's termination, where the statement was not made by an ADS manager and there is undisputed evidence that ADS had discharged over three dozen people for exceeding 12 months of leave without being able to return to their jobs during the relevant time period.

Where Kuchenreuther has failed to show that Mr. Kirkland was directly involved in the decision to terminate him for exceeding 12 months of leave, he might be able to proceed, if he had generated a genuine issue of material fact that the ADS human resources department, an innocent decisionmaker, was merely Mr. Kirkland's "cat's paw." *See, e.g., Coe v. Northern Pipe Prods., Inc.*, 589 F. Supp. 2d 1055, 1087-94

(N.D. Iowa 2008). Here, however, Kuchenreuther has pointed to absolutely no evidence that Mr. Kirkland had any impact or influence on or made any recommendation about whether or not Kuchenreuther should be fired when his absence exceeded 12 months. *See id.*

Kuchenreuther has failed to generate any genuine issues of material fact that he was not fired for exceeding 12 months of leave or otherwise to generate genuine issues of material fact that he was fired for seeking workers compensation benefits.

THEREFORE, ADS's November 18, 2013, Motion For Summary Judgment (docket no. 14) is **granted** on all of Kuchenreuther's claims, and **judgment** shall enter accordingly.

**IT IS SO ORDERED**.

**DATED** this 4th day of February, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA